1545-14

No. PD-1545-14

In The Court Of Criminal Appeals

Of Texas

At Austin, Texas

ORIGINAL

RECEIVED IN
COURT OF CRIMINAL APPEALS

JAN 23 2015

Abel Acosta, Clerk

FILED IN
COURT OF CRIMINAL APPEALS

JAN 23 2015

Abel Acosta, Clerk

Reynaldo Rey
Appellant In Pro Se,

Vs.

The State Of Texas
Respondent

From The Court Of Appeals
For The Seventh District Of Texas
At Amarillo Texas

Petition In Cause Number 2012-433,479
From The 137th Judicial District Court Of Lubbock
County, Texas Honorable John J. (Trey) McClendon;
Court Of Appeals 07-12-00479-CR

Petition For Discretionary Review

# Table of Contents

Identity of Judge, Parties and Counsel . . . . . . . 2

Index of Authorities . . . . . . . . . . . 3 4

Statement Regarding Oral Argument . . . . . . 4

Statement of the Case . . . . . . . . . . 4 5

Statement of Procedural History . . . . . . . . 5

Grounds for Review . . . . . . . . . . . . . 5

Issue No. 1
The Trial Court Erred in Finding The State Met it's Threshold Burden of Authentication The DNA Evidence Introduced Later Before The Jury At Trial . . . . . . . . . . . . 5

Issue No. 2
The Evidence Presented During The Trial Was Legally Insufficient To Support The Jury's Verdict Of Guilty . . . . . . . . . 5

Argument for Ground One . . . . . . . 5 6 7 8 9

Argument for Ground Two . . . . . 9 10 11 12 13 14

Prayer for Relief . . . . . . . . . . . . . . 14

Certificate of Service . . . . . . . . . . . . 15

Appendix . . . . . . . . . . . . . . . . 16

# Identity Of Judge Parties And Counsel

## Trial Court Judge:

Judge John J. McClendon, III, 137th District Court, Lubbock County, Texas

## Appellant

Reynaldo Rey

## Appellant's Appellate Counsel

Mr. Daniel J. Warrick
Attorney at Law
P.O. Box 225
Lubbock, Tx 79408-0225

## Appellant's Trial Counsel

Mr. Jaime O. Lopez
Attorney at Law
1402 Crickets Avenue
Lubbock, Tx 79401

## Appellee

State of Texas

## Appellees Trial Counsel

Mr. Matthew Powell, Sunshine Stonek & Amber Davis.
Lubbock Criminal District Attorney
P.O. Box 10536
Lubbock, TX 79408-3536

## Appellee's Appellate Counsel

Mr. Matthew Powell
Lubbock Criminal District Attorney
P.O. Box 10536
Lubbock, TX 79408-3536

# Index Of Authorities

Case Law                                                                 Page

Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). 6

Blanco v. State, 962 S.W.2d 46 (Tex. Crim. App. 1998). . . 10

Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000) 7

Davis v. State, 992 S.W.2d 8, 11-12 (Tex. App. - Houston [1st Dist.] 1996, no pet.) . . . . . . . . . . . . . . . . . . . 7

Fuller v. State, 73 S.W.3d 250 (Tex. Crim. App. 2002). . 9 10

Guzman v. State, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997) 6

Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1970) . . . . . . . . . . . . . . . . . . . . . . . 9

Lagrone v. State, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997) . 6

Malik v. State, 953 S.W.2d 239 (Tex. Crim. App. 1997). . . 9

Maranda v. State, 253 S.W.3d 762, 766 (Tex. App. - Amarillo 2007, pet. dismissed) . . . . . . . . . . . . . . . . . . . 6

Montgomery v. State, 810 S.W.2d 372, 391 (Tex. App. 1990) (opin. on rehearing) . . . . . . . . . . . . . . . . . . . 6

Mosley v. State, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). 10

Pondexter v. State, 942 S.W.2d 577, 586 (Tex. Crim. App. 1996). . 6

Rodriguez v. State, 146 S.W.3d 674, 677 (Tex. Crim. App. 1986). . . 10

Rodriguez v. State, 819 S.W. 2d 871 (Tex. Crim. App. 1991) . . . . 11

Smith v. State, 683 S.W. 2d 393, 405 (Tex. Crim. App. 1984) . . . 6

Stoker v. State, 788 S.W. 2d 1, 10 (Tex. Crim. App. 1989) cert denied. 498 U.S. 951. 111 S.Ct. 371. 112 L.Ed. 2d. 333 (1990) . . . . 6

Weatherred v. State, 15 S.W. 3d 540, 542 (Tex. Crim. App. 2000) . . 7

Statutes

Texas Penal Code, Section 19.02 (b) (1) . . . . . . . . . 10

Texas Penal Code, Section 19.03 (a) (2) . . . . . . . . 10

Rules

Texas Rules of Evidence, Rule 901(a) . . . . . 6

Statement Regarding Oral Argument

Appellant **Waives** Oral Argument

Statement Of The Case

On September 27, 2012, the Appellant was found guilty by the jury of the offense of Capitol Murder, as alledged in the indictment in Cause No. 2012-433,479. (Indictment. CR. p. 7; verdict. CR pp. 147; Judgement. CR. pp 149-151 and RR, 6, p. 174) The court assessed punishment as "Capitol life with the possibility for Parole." (Judgement. CR. pp. 149-151; and RR. 6, p 176)

On October 10, 2012, the Appellant filed his motion for New Trial. (CR. pp. 152-154) On October 29, 2012, the Appellant filed his Notice of Appeal. (CR. pp. 156) The Trial

Court's Certification of the Defendant's Right to Appeal was filed on October 4, 2012. (CR. p. 148) The Appellant's Affidavit of Indigency was filed on October 29, 2012. (CR. p. 157) The Clerk's Record was filed on January 25, 2013. The Reporter's Record was filed on April 27, 2013, and the Supplemental Reporter's Record was filed on May 29, 2013.

## Statement Of Procedural History

The Amarillo Court of Appeals affirmed Appellant's Conviction on October 29, 2014. Neither Side filed a motion for rehearing.

## Grounds For Review

1. The Trial Court Erred In Finding The State Met It's Threshold Burden of Authenticating The DNA Evidence Introduced Later Before The Jury At Trial.

2. The Evidence Presented During The Trial Was Legally Insufficient To Support The Jury's Verdict of Guilty.

## Argument For Ground One

In general, a trial court's decision to admit or exclude evidence during trial is reviewed for an abuse of discretion. The trial court's ruling should be affirmed as long as it lies within the zone of reasonable disagreement.

-5-

Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (opin on reh'g); Maranda V. State, 253 S.W.3d 762, 766 (Tex. App.—Amarillo 2007, pet. dism'd). In reviewing a trial court's ruling on a motion to suppress or exclude evidence, the the court should defer to the trial court's determination of historical facts that the record supports, particulary when the fact findings are based on evaluation of the witnesses' credibility, but review de novo the trial courts application of the facts to the law. Guzman v. State, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997); Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002).

Authentication of physical evidence requires identification by "evidence sufficient to support a finding that the matter in question is what it's proponent claims." Texas Rules of Evidence, Rule 901 (a). Evidence should be admitted if the trial court finds that the evidence was authenticated. Pondexter v. State, 942 S.W.2d 577, 586 (Tex. Crim. App. 1996). Proof of the beginning and end of the chain of custody will will support admission of an object barring any evidence of tampering or alteration. Stoker v. State, 788 S.W.2d 10 (Tex. Crim. App. 1989), cert denied 498 U.S. 951, 111 S.ct. 371, 112 L.Ed.2d 333 (1990). Without evidence of tampering most questions concerning care and custody of an item go to weight attached, not the admissability of of the evidence. Lagrone v. State, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997) (addressing custody of controlled substance.); the trial court has the discretion to determine the sufficiency of an evidentiary predicate. Smith v. State, 683 S.W.2d 393, 405 (Tex. Crim. App. 1984).

Once the proponent of evidence meets the threshold requirement of presenting testimony that the evidence is what the proponent says it is, the weight given the evidence and related testimony is within the providence of the trier of fact. See Davis v. State, 992 S.W.2d 8, 11-12 (Tex. App.-Houston [1st Dist] 1996, no pet.).

When the trial court does not make explicit findings of historical fact, a reviewing court should view the evidence in a light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact that can be supported by the record. Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000). In reviewing the trial court's evidentiary ruling a reviewing court should consider only what was before the trial court at the time of it's ruling. Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000)

The trial Court conducted a pretrial hearing on Appellant's Motion for Hearing on Chain of Custody of physical evidence on September 24, 2012, at which testimony was presented concerning the Chain of Custody of physical evidence collected on June 29, 1989, until DNA analysis was conducted on or about April 13, 2011. (Date of testing, R.R. 6, p. 66)

The State's burden at the Chain of Custody hearing was to establish that the items from "Submission 1" were in fact the items collected from 1916 6th Street. Submission 1 is the most important since the genetic material connecting Appellant to the crime scene was supposedly derived from those items.

-7-

Gaylon Lewis testified to his role in the crime scene investigation as a member of the Identification Section of the Lubbock Police Department. On this occasion his role was photographing the crime scene in general and the evidence being collected. Deceased Detective Walt Crimmin's role was to collect evidence. (RR. 3, p. 45)

Gaylon Lewis testified that he worked along side Crimmins as Crimmins collected each piece of evidence. (RR. 3, p. 46) Except for the items collected by George Paramore and referred to in State's Pretrial Exhibit #1. (SRR. 2, pp. 3-4) He identified the robe, pillow cases, and bed linens as the same ones collected by Crimmins 23 years earlier. (RR. 3, pp. 52-53, 56-61) But he could not testify to who bagged or helped collect the robe, pillow cases, quilt, sheets and blanket. And he could not recall how these items were collected. (RR. 3, p. 64)

The State's witnesses could not agree on when the crime scene was active. Poe, Curry and Parramore testified to June 28, 1989. (RR. 3, p. 23 ¿Poe¿, p. 28 ¿Curry¿, p. 36-37 ¿Parramore¿ But Lewis testified to June 29, 1989. (RR. 3, p. 44)

The DPS Lab records could not agree on when items were received. State's Pretrial Exhibit #16 indicates that Submission 1 was received on June 30th 1989. (SRR. 2, p. 22) State's Pretrial #4 bears a received stamp date of June 29, 1989, on the first page and a typed date of June 30, 1989, on the second page (SRR. 2 pp. 7-8) The Testimony of Jim Thomas does not help clear this discrepency since he testified to both dates. (RR. 3, pp. 87-88, 91)

The Appellant leaves it up to this court to decide whether the testimony of retired officer Gaylon Lewis is sufficient to form the first link in the State's Chain of Custody of the items from which hairs (State's Exhibit #17) were recovered. In the absence of testimony from the deceased officer who

-8-

collected the "bedspread, quilt, blanket, and sheet" (State's Pretrial Exhibit #14) at the crime scene. With conflicting testimony about whether State's Pretrial Exhibit #14 was collected on June 28, 1989, or June 29th without any clear testimony from Lewis about what procedures were used to recover these items and protect them from contamination at the 1989 crime scene. It is the Appellant's position that Walt Crimmins must have collected the proferred evidence, and collected it the right way. is is not sufficient to establish that the items are what the proponent claim them to be.

## Argument For Ground Two

The proper standard of review for a court to utilize in determining whether the evidence presented is legally sufficient to support a conviction is: whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of an offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.ct. 2781, 61 L.Ed. 2d 560 (1970). Federal Constitutional law measures evidentiary sufficiency against the elements of the criminal offense as defined by State law. Fuller v. State, 73 S.W. 3d 250 (Tex. Crim. App 2002)

The legal sufficiency of the evidence is measured by the elements of the offense as defined by the hypothetically correct jury charge; accurately sets out the law. is authorized by the indictment. does not unnecessarily increase the state's theories of liability, and adequately describes the particular offense for which the defendant was tried. Malik v. State, 953 S.W. 2d 239 (Tex.Crim.App. 1997):

Blanco v. State, 962 S.W. 2d 46 (Tex. Crim. App. 1998).

The jury as trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony: therefore, reconciliation of any conflicts in the evidence is within the exclusive province of the jury. Mosley v. State, 983 S.W. 2d 249, 254 (Tex. Crim. App 1998).

In conducting a sufficiency analysis, this court should disregard allegations in indictment that are not a statutory element or an integral part of an essential element of the offense charged. Fuller. Supra.

Texas Penal Code, Section 19.03(a)(2), Provides that a Capital murder occurs when an individual intentionally commits murder under Section 19.02(b)(1) while in the course of committing or attempting to commit kidnaping, burglary, robbery, aggravated assault, arson, obstruction, or retaliation, or terroristic threat under section 22.07(a)(1),(3),(4),(5), (6). In Proving capital murder, the State must prove that the accused intentionally or knowingly caused the death of an individual and also that the accussed engaged in other criminal conduct or had knowledge of certain circumstances which elevates the intentional murder to capital murder. Rodriguez v. State, 146 S. W. 3d 674, 677 (Tex. Crim. App.) citations omitted.

The Appellant was accused of intentionally or knowingly causing the death of Minnie Elkins, by striking M.S. Elkins with an unknown hard object, while in the process of committing or attempting to commit the offense of burglary of a habitation, owned by the deceased. (Indictment, CR, p. 7; Charge, CR, pp. 140-141)

The State based its case on the DNA evidence recovered by Walt Crimmins on June 28, or 29 of 1989.

-10-

without waiving the Previous Point of error Appellant must address that evidence in analyzing the sufficiency of the evidence introduced before the jury. Rodriguez v. State, 819 S.W. 2d 871 (Tex. Crim. App. 1991).

Jim Thomas, of the DPS, Lubbock Regional Crime Lab, testified before the jury. (RR. 5, pp. 244-268) The bedspread, quilt, blanket, and sheet, removed from Ms. Elkins bed was admitted over Appellant's renewed objection as State's Exhibit #162. (RR. 5, p. 254) Mr. Thomas testified to locating, while conducting a trace evidence analysis on State's Exhibit #162, "some hairs from the bed linen." He could not elaborate on which item(s) the hairs had come from, since the items analyzed were packaged together. He placed these five hairs in a ziplock bag and the five were admitted as State's Exhibit #175. (RR. 5, pp. 257-258) Brent Hester, a forensic scientist with the DPS Lab in Lubbock, testified before the jury. (RR. 6, p. 17) He located a partial DNA profile that did not belong to the victim that came from the hairs in State's Exhibit #175. (RR. 6, pp. 34-36) He compared the partial DNA profile to a known sample derived from State's Exhibit #172, A buccal swab from the Appellant. (RR. 6, p. 39) The Appellant's DNA profile was consistant with the partial DNA profile from hair number 1 in State's Exhibit #175. (RR. 6, p. 45) Of greater significance, the Appellant could not be excluded as the contributor of hair #5 in State's Exhibit #175. The chances of randomly selecting a match, regarding hair number 5, would be 1 out of 29.5 billion Caucasians, 1 in 1.941 billion for blacks, and 1 in 551.9 million for Hispanics. (RR. 6, p. 46)

Brent Hester also determined through Y-STR analysis that the Appellant, or a direct male relative

-11-

of the Appellant, contributed genetic material located on a pillowcase and the robe (State's Exhibit Numbers 159 and 160, respectively) collected by Walt Crimmins. (RR. 5, pp. 123-126, and RR. 6 pp. 57-58) Using the Y-STR results, Mr. Hester could exclude several of the named alternate suspects in the case. However the Y-STR testing resulted in 2 hits out of a database of only 8,487. (RR. 6 pp. 57-58) These items robe, and pillowcase, were not only handled by law enforcement but also by the deceased's daughter (RR. 6 pp. 97-99)

The State did not prove how it collected the evidence. Brent Hester changed his gloves in court each time he handled a new piece of evidence. (RR. 6, p. 60) Retired detective Lewis testified that both himself and Walt Crimmins wore gloves in 1989. and that gloves were "standard protocol" in 1989. (RR. 5, p. 81) On cross Lewis went so far as to claim he and Walt Crimmins both wore gloves and shoe coverings at the crime scene in 1989. (RR. 5, p. 143) When confronted with the testimony of another officer who was there at the crime scene, that neither Lewis nor Crimmins wore gloves or booties, Lewis claimed he could no longer recall if he, and Detective Crimmins wore gloves or shoe covers. (RR. 5, p. 144)

The State did not prove why the DNA evidence was significant. In it's final Argument, Mr. Powell told the jury:

"What they don't want us to say, and what they Are trying to avoid is how in the world [Appellant's] pubic hairs ended up in the bed of this victim. Cannot explain it. Their own witness explained it. Simply means that he was there. His words, not mine. He was there. That's what it means." (RR. 6, p. 169)

Mr. Powell's comments are a good summary of the

State's case. Assuming a 1 in 591.9 is a "match", the presence of Appellant's DNA material inside Ms. Elkins residence could prove that either he had been inside her home. Hair number 5 could just as easily show that someone else unknowingly deposited one of his hairs in her home. The State provided no testimony to the jury about when the DNA material was introduced to Ms. Elkins home.

If the jury is allowed to assume, based on the partial DNA profile, that the Appellant was in Ms. Elkins home, the state provided no evidence of any criminal activity occuring at the same time the DNA material was deposited in Ms. Elkins home, specifically there was no testimony that any of the DNA material was left by the Appellant, while the Appellant, or some other party, that the Appellant can be held criminally liable for the actions of, was engaged in any act.

A jury is permitted to make reasonable inferences from the evidence. Mosley. at 254-55. In this case the state went beyond suggesting reasonable inferences and asked the jury to convict if the Appellant could not "explain" the presence of "his" DNA in Ms. Elkins home. (RR.6, p. 167 [twice], p. 168 [once], p. 169 [twice], p. 170 [three times] The Appellant's Trial Counsel objected twice to these comments by the State on the grounds the State was attempting to shift the burden of proof to the Appellant. (RR.6, pp.168 and 170)

It may be reasonable to infer, based on the partial DNA "match", that the Appelant was in Ms. Elkins home, even though his presence is not the exclusive means for this DNA to enter her home. Mere presence of a partial DNA profile is as far as the State's evidence goes. As the State admitted at trial when it asked

-13-

the jury to convict the Appellant if he failed to disprove the State's accusation of Capital Murder.

1) In the absence of the initial link in the State's chain of custody, the trial court abused it's discretion allowing the State to introduce evidence collected at the crime scene.

2) No reasonable juror could have found that the State's evidence introduced before the Jury established beyond a reasonable doubt that the Appellant, individually or as a party to another's criminal act, intentionally or knowingly murdered Ms. Elkins: during the commission of a burglary of her residence or the attempted burglary of her residence.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, The Appellant asks this Honorable Court to Grant his Petition for Discretionary Review and Reverse the Judgement and remand this case to the Trial Court for further proceedings, or in the alternative, reverse the judgement and render a verdict of acquital.

Respectfully Submitted,

*Reynaldo Rey*                    1820097
Reynaldo Rey   T.D.C.J #~~180097~~
Bill Clements Unit
9601 SPUR 591
Amarillo, Texas 79107-9606

Appellant

-14-

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of Appellant's Petition for Discretionary Review has been mailed to the parties listed below on this January 13, 2015.

Mr. Abel Acosta, Clerk
Court of Criminal Appeals of Texas
P.O. Box 12308,
Capitol Station
Austin, Texas 78711

Lisa C. McMinn
State Prosecuting Attorney
P.O. Box 13046
Austin, Texas 78711-3046
Phone: 512-463-1660
Fax: 512-463-5724

*Reynaldo Rey*
Reynaldo Rey

-15-

# Appendix A; Indictment

NO. **2012** 433479         2011006830

THE STATE OF TEXAS
         VS.
**REYNALDO REY**

| | | |
|---|---|---|
| Bond: | **$500,000** | |
| Date Prepared: | January 10, 2012 | |
| Ref#: | 900193081 | |

PID: 2506     DOB: 04/15/1963
Felony Charge:    **CAPITAL MURDER-OTH FELONY**
District Court No:     137

| | |
|---|---|
| Agency/Rpt#: | LPD / 89-23029 |
| Arrest Date: | / / |
| Prior Cause No: | 2011-430,867 |

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS,

The duly organized Grand Jury of the District Court of Lubbock County, Texas, presents in and to said Court that:

In Lubbock County, Texas, **REYNALDO REY**, hereafter styled the Defendant, heretofore on or about the 28th day of June, A.D. 1989, did then and there intentionally or knowingly cause the death of an individual, namely, MINNIE ELKINS, by striking the said MINNIE ELKINS with a hard object, the exact nature of which is unknown to members of the grand jury, and the defendant was then and there in the course of committing or attempting to commit the offense of burglary of a habitation of MINNIE ELKINS, who was the owner of said habitation;

0290019308104
INDT - INDICTMENT FILED DIST COURT
Case No: 2012433479

AGAINST THE PEACE AND DIGNITY OF THE STATE

_Foreman of the Grand Jury_

PRESENTED THIS _10_ DAY OF _____, A.D. 20_12_

INDICTMENT/ORIGINAL

# Appendix B; Court's Charge (Guilt/Innocence)

NO. 2012-433,479

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| VS. | § | OF LUBBOCK COUNTY, TEXAS |
| REYNALDO REY | § | 137TH JUDICIAL DISTRICT |

## COURT'S CHARGE

MEMBERS OF THE JURY:

The defendant, REYNALDO REY, is accused of Capital Murder. The defendant has entered a plea of "not guilty," and you have heard all of the evidence that will be produced on whether the defendant has been proven guilty.

Both sides will soon present final arguments. Before they do, I must now give you instructions you must follow in deciding whether the defendant has been proven guilty or not.

You may take your copy of these instructions into the jury room with you to use during your deliberations.

First, I will tell you about some general principles of law that must govern your decision of the case. Then I will tell you about the specific law applicable to this case. Finally, I will instruct you on the rules that must control your deliberations.

### The Indictment

The indictment is not evidence of guilt. The indictment is only a document required to bring the case before you. The indictment cannot be considered in any

136

way by the jury. Do not consider the fact that the defendant has been arrested, confined, or indicted or otherwise charged. You may not draw any inference of guilt from any of these circumstances.

**Presumption of Innocence**

The defendant is presumed innocent of the charge. All persons are presumed to be innocent, and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The law does not require a defendant to prove his innocence or produce any evidence at all. Unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all of the evidence in the case, the presumption of innocence alone is sufficient to acquit the defendant.

**Burden of Proof**

The burden of proof throughout the trial is always on the state. The defendant does not have the burden to prove anything. The state must prove every element of the offense beyond a reasonable doubt to establish guilt for the offense. If the state proves every element of the offense beyond a reasonable doubt, then you must find the defendant guilty. If the state does not prove every element of the offense beyond a reasonable doubt, then you must find the defendant not guilty.

It is not required that the state prove guilt beyond all possible doubt; it is

2

required that the state's proof excludes all "reasonable doubt" concerning the defendant's guilt.

If you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict "Not Guilty."

**Jury as Fact Finder**

As jurors, you review the evidence and determine the facts and what they prove. You judge the believability of the witnesses and what weight to give their testimony.

In judging the facts and the believability of the witnesses, you must apply the law provided in these instructions.

**Evidence**

The evidence consists of the testimony and exhibits admitted in the trial. You must consider only evidence to reach your decision. You must not consider, discuss, or mention anything that is not evidence in the trial. You must not consider or mention any personal knowledge or information you may have about any fact or person connected with this case that is not evidence in the trial.

Statements made by the lawyers are not evidence. The questions asked by the lawyers are not evidence. Evidence consists of the testimony of the witnesses and

3

138

exhibits admitted into evidence.

Nothing I have said or done in this case should be considered by you as my opinion about the facts of this case or influence you to vote one way or the other.

You should give terms their common meanings, unless you have been told in these instructions that the terms are given special meanings. In that case, of course, you should give those terms the meanings provided in these instructions.

While you should consider only the evidence, you are permitted to draw reasonable inferences from the testimony and exhibits that are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the evidence.

You are to render a fair and impartial verdict based on the evidence admitted in the case under the law that is in these instructions. Do not allow your verdict to be determined by bias or prejudice.

**Admitted Exhibits**

You may, if you wish, examine exhibits. If you wish to examine an exhibit, the foreperson will inform the court and specifically identify the exhibit you wish to examine. Only exhibits that were admitted into evidence may be given to you for examination.

4

## The Verdict

The law requires that you render a verdict of either "guilty" or "not guilty." A verdict of "not guilty" simply means that the state's evidence does not prove the defendant guilty beyond a reasonable doubt.

You may return a verdict only if all twelve of you agree on this verdict.

When you reach a verdict, the foreperson should notify the court.

## Defendant's Right to Remain Silent

The defendant has a constitutional right to remain silent. The defendant may testify on his own behalf. The defendant may also choose not to testify. The defendant's decision not to testify cannot be held against him, and it is not evidence of guilt. You must not speculate, guess, or even talk about what the defendant might have said if he had taken the witness stand or why he did not. The foreperson of the jury must immediately stop any juror from mentioning the defendant's decision not to testify.

## Accusation

In Lubbock County, Texas, REYNALDO REY, hereafter styled the Defendant, heretofore on or about the 28th day of June, 1989, did then and there intentionally or knowingly cause the death of an individual, namely Minnie Elkins, by striking the said Minnie Elkins with a hard object, the exact nature of which is unknown to

5

members of the grand jury, and the defendant was then and there in the course of committing or attempting to commit the offense of burglary of a habitation of Minnie Elkins, who was the owner of said habitation.

**Relevant Statutes**

A person commits the offense of Capital Murder if the person intentionally commits the murder in the course of committing or attempting to commit burglary.

A person commits the offense of Murder if he intentionally or knowingly causes the death of an individual.

A person commits the offense of Burglary of a Habitation if, without the effective consent of the owner, the person enters a habitation not then open to the public, with intent to commit a felony, theft, or an assault; or remains concealed, with intent to commit a felony, theft, or an assault, in a habitation; or enters a habitation and commits or attempts to commit a felony, theft, or an assault.

**Definitions**

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is he conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature

6

141

of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Owner means a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor.

Enter means to intrude any part of the body or any physical object connected with the body.

Actor means a person whose criminal responsibility is in issue in a criminal action.

**Parties**

All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

Mere presence alone will not constitute one a party to an offense.

7

142

## Application of Law to Facts

Our law provides that a person commits murder when he intentionally or knowingly causes the death of an individual.

A person commits capital murder when such person intentionally commits the murder in the course of committing or attempting to commit the offense of burglary of a habitation.

Now, if you find from the evidence beyond a reasonable doubt that on or about June 28, 1989, in Lubbock County, Texas, the defendant, REYNALDO REY, did then and there intentionally cause the death of an individual, namely Minnie Elkins, by striking the said Minnie Elkins with a hard object, the exact nature of which is unknown to members of the grand jury, and the defendant was then and there in the course of committing or attempting to commit the offense of burglary of a habitation of Minnie Elkins, then you will find the defendant "Guilty" of capital murder.

If you have a reasonable doubt as to whether the defendant is guilty of capital murder as alleged in the indictment then you will find the defendant "Not Guilty", and say so by your verdict.

## Rules That Control Jury Deliberations

You must follow these rules while you are in deliberation and until you reach a verdict. After the closing arguments by the attorneys, you will go into the jury room.

8

143

Your first task will be to pick your foreperson. The foreperson should conduct the deliberations in an orderly way. Each juror has one vote, including the foreperson. The foreperson must supervise the voting, vote with other members on the verdict, and sign the verdict form.

While deliberating and until excused by the trial court, all jurors must follow these rules:

1.    You must not discuss this case with any court officer, or the attorneys, or anyone not on the jury;

2.    You must not discuss this case unless all of you are present in the jury room;

3.    You must communicate with the judge only in writing, signed by the foreperson and given to the judge through the bailiff;

4.    You must not conduct any independent investigations, research, or experiment;

5.    You must tell the judge if anyone attempts to contact you about the case before you reach your verdict; and

6.    You must not use your cell phones for any purpose.

Your sole duty at this point is to determine whether the defendant has been proven guilty. You must restrict your deliberations to this matter.

9

After you have arrived at your verdict, you are to use one of the forms attached to these instructions. The foreperson must sign his or her name to the particular form that conforms to your verdict.

After the closing arguments by the attorneys, you will begin your deliberations to decide your verdict.

The above and foregoing is the charge in this case, and the same is hereby signed and certified by the court, this the 27th day of September, 2012.

_____
Judge Presiding

10

# Appendix C; Judgment of Conviction by Jury

| THE STATE OF TEXAS | § | IN THE 137TH DISTRICT |
| | § | |
| v. | § | COURT |
| | § | |
| REYNALDO REY | § | LUBBOCK COUNTY, TEXAS |
| | § | |
| STATE ID NO.: TX 2823378 | § | |

## JUDGMENT OF CONVICTION BY JURY

| Judge Presiding: | HON. JOHN J. McCLENDON III | Date Judgment Entered: | Septmbr 27, 2012 |
| Attorney for State: | MATTHEW D. POWELL and SUNSHINE STANEK | Attorney for Defendant: | JAIME LOPEZ |

Offense for which Defendant Convicted:
**CAPITAL MURDER- OTHER FELONY**

| Charging Instrument: INDICTMENT | Statute for Offense: § 19.03(A)(2) |

Date of Offense:
**06/28/1989**

| Degree of Offense: CAPITAL MURDER | Plea to Offense: NOT GUILTY |
| Verdict of Jury: GUILTY | Findings on Deadly Weapon: NA |

| Plea to 1st Enhancement Paragraph: NA | Plea to 2nd Enhancement/Habitual Paragraph: NA |
| Findings on 1st Enhancement Paragraph: NA | Findings on 2nd Enhancement/Habitual Paragraph: NA |

Punished Assessed by:
**JURY**        Date Sentence Imposed/to Commence:        **09/27/2012**

Punishment and Place of Confinement: **CAPITAL LIFE TDCJ-ID**

THIS SENTENCE SHALL RUN **CONCURRENT** .

☐ Sentence OF CONFINEMENT Suspended, Defendant placed on community supervision for.

| Fine: $ 0 | Court Costs: $ 214 50 | Restitution: $ 0 | Restitution Payable to: ☐ VICTIM (see below) ☐ AGENCY/AGENT (see below) |

☐ Attachment A, Order to Withdraw Funds, is incorporated into this judgment and made a part thereof.

Sex Offender Registration Requirements ☐ Apply ☐ Does Not Apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62.

The age of the victim at the time of the offense was **NA**. The requirements set out in this judgment in no way alter previous registration requirements for this Defendant, if any.

| | If Defendant is to serve sentence in TDCJ, enter incarceration periods in chronological order. |
| Time Credited: | From 5-14-11 to PRESENT   From_____ to_____   From_____ to_____ |
| | From_____ to_____   From_____ to_____   From_____ to_____ |
| | If Defendant is to serve sentence in jail or is given credit toward fine and costs, enter days credited below. |
| | TOTAL DAYS:          NOTES: |

All pertinent information, names and assessments indicated above are incorporated into the language of the judgment below by reference.

This cause was called for trial in Lubbock County, Texas. The State appeared by her District Attorney.

Counsel / Waiver of Counsel (select one)

☒ Defendant appeared in person with Counsel.

☐ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.

It appeared to the Court that Defendant was mentally competent and had pleaded as shown above to the charging instrument. Both parties announced ready for trial. A jury was selected, impaneled, and sworn. The INDICTMENT was read to the jury, and Defendant entered a plea to the charged offense. The Court received the plea and entered it of record.

The jury heard the evidence submitted and argument of counsel. The Court charged the jury as to its duty to determine the guilt or innocence of Defendant, and the jury retired to consider the evidence. Upon returning to open court, the jury delivered its verdict in the presence of Defendant and defense counsel, if any.

149

The Court received the verdict and ꓳRDERED it entered upon the minutes of the Cour

Punishment Assessed by Jury / Court / No election  (select one)

☒ **Jury.** Defendant entered a plea and filed a written election to have the jury assess punishment. The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the question of punishment. After due deliberation, the jury was brought into Court, and, in open court, it returned its verdict as indicated above.

☐ **Court.** Defendant elected to have the Court assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

☐ **No Election.** Defendant did not file a written election as to whether the judge or jury should assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

The Court FINDS Defendant committed the above offense and ORDERS, ADJUDGES AND DECREES that Defendant is GUILTY of the above offense. The Court FINDS the Presentence Investigation, if so ordered, was done according to the applicable provisions of TEX. CODE CRIM. PROC. art. 42.12 § 9.

The Court ORDERS Defendant punished as indicated above. The Court ORDERS Defendant to pay all fines, court costs, and restitution as indicated above.

Punishment Options  (select one)

☒ **Confinement in State Jail or Institutional Division.** The Court ORDERS the authorized agent of the State of Texas or the Sheriff of this County to take, safely convey, and deliver Defendant to the TDCJ-ID. The Court ORDERS Defendant to be confined for the period and in the manner indicated above. The Court ORDERS Defendant remanded to the custody of the Sheriff of this county until the Sheriff can obey the directions of this sentence. The Court ORDERS that upon release from confinement, Defendant proceed immediately to the Lubbock County Judicial Compliance Department. Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **County Jail—Confinement / Confinement in Lieu of Payment.** The Court ORDERS Defendant immediately committed to the custody of the Sheriff of Lubbock County, Texas on the date the sentence is to commence. Defendant shall be confined in the Lubbock County Jail for the period indicated above. The Court ORDERS that upon release from confinement, Defendant shall proceed immediately to the Lubbock County Judicial Compliance Department. Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **Fine Only Payment.** The punishment assessed against Defendant is for a FINE ONLY. The Court ORDERS Defendant to proceed immediately to the Lubbock County Judicial Compliance Department . Once there, the Court ORDERS Defendant to pay or make arrangements to pay all fines and court costs as ordered by the Court in this cause.

Execution / Suspension of Sentence  (select one)

☒ The Court ORDERS Defendant's sentence EXECUTED.

☐ The Court ORDERS Defendant's sentence of confinement SUSPENDED. The Court ORDERS Defendant placed on community supervision for the adjudged period (above) so long as Defendant abides by and does not violate the terms and conditions of community supervision. The order setting forth the terms and conditions of community supervision is incorporated into this judgment by reference.

The Court ORDERS that Defendant is given credit noted above on this sentence for the time spent incarcerated.

### Furthermore, the following special findings or orders apply:

| | |
|---|---|
| **Court Costs** | $ 214.50 |
| **Attorney Fee** | $ 0 |

An additional fee of $25 is due if Court Costs not paid within 31 days of this judgment.

The Defendant shall submit a blood sample or other specimen, such as a Buccal swab, within one week of sentencing, to the Department of Public Safety under Subchapter G, Chapter 411, Government Code, for the purpose of creating a DNA record.

The Defendant waives any and all interest in any property seized in connection with this case, cash or property (real or personal, tangible or intangible) which is the subject of any civil forfeiture action.

Signed and entered on this the ___4___ day of ___October___, 2012

X _____
JOHN J. McCLENDON III
JUDGE PRESIDING





Fingerprint from
Left thumb
of Defendant

Fingerprint from
Right thumb
of Defendant

Name: Reynaldo Nery

Cause No. 12-433,479

137 TH DISTRICT COURT

Date Sentence Imposed: 9/27/12

## RECEIPT OF DEFENDANT

I, the undersigned Defendant in the above described cause, on this day received from the clerk of this Court a copy of the above Order.

SIGNED this the 27 day of September, A.D. 2012

_____
Defendant

151

# Appendix D; Motion for Hearing on Chain of Custody

NO. 2012-433,479

| STATE OF TEXAS | § | IN THE DISTRICT COURT |
| vs. | § | 137th JUDICIAL DISTRICT |
| REYNALDO REY | § | LUBBOCK COUNTY, TEXAS |

FILED FOR RECORD
DISTRICT CLERK LUBBOCK CO.
BY ___
2012 MAR 27 PM 4: ___
DEPUTY

## MOTION FOR HEARING ON CHAIN OF CUSTODY

**TO THE HONORABLE JUDGE OF SAID COURT:**

Now comes Reynaldo Rey, Defendant in the above styled and numbered cause, and moves this Court to conduct a hearing prior to trial and outside the presence of the jury to determine the preliminary question of the chain of custody of the DNA material tested upon which the state intends to rely at trial, and to determine the underlying facts upon which admissibility will be established, and for good cause shows the following:

1.  Reynaldo Rey expects the state to rely upon DNA testing to prove its case.

2.  The burden of establishing the chain of custody, and thereby the admissibility of the results of DNA testing, rests on the party offering the evidence.

3.  Whether the proffered testing possesses the requisite chain of custody is a preliminary matter for the trial court to decide and not a matter of weight to be determined by the jury.

4.  The party offering such evidence also bears the burden of establishing its relevance, and that its probative value outweighs its prejudicial potential.

5.  Reynaldo Rey requests a hearing on the preliminary question concerning the chain of custody pursuant to Rule 104(a) of the Texas Rules of Evidence.

6.  In addition to the Rule 104(a) hearing, Reynaldo Rey is entitled to a voir dire



02900193081055
PTMO - PRETRIAL MOTION
Case No: 2012433479

94

examination out of the hearing of the jury for the State to satisfy the "requirement of authentication 901.

**WHEREFORE, PREMISES CONSIDERED,** Reynaldo Rey respectfully prays that this Honorable Court grant this motion and order a hearing pursuant to Texas Rules of Evidence 104(a) and 901.

Respectfully submitted,

Lopez Law Firm
1402 Crickets Avenue
Lubbock, TX 79401
Tel: (806) 744-4000
Fax: (806) 744-7740

By:_____
Jaime O. Lopez
State Bar No. 24013058
Attorney for Reynaldo Rey

## CERTIFICATE OF SERVICE

This is to certify that on March 23, 2012, a true and correct copy of the above and foregoing document was served on the District Attorney's Office, Lubbock County, Sunshine Stanek, by hand delivery.

_____
Jaime O. Lopez

95



# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-12-00479-CR

---

REYNALDO REY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2012-433,479, Honorable John J. "Trey" McClendon, Presiding

---

October 29, 2014

## MEMORANDUM OPINION

Before QUINN, C.J. and CAMPBELL and HANCOCK, JJ.

Appellant Reynaldo Rey appeals from his conviction by jury of the offense of capital murder[1] and the resulting sentence of imprisonment for life. He presents two appellate issues. We will affirm the judgment of the trial court.

---

[1] TEX. PENAL CODE ANN. § 19.03(A)(2) (West 2012).

Background

Minnie Elkins was a 92-year-old widow living alone in the 1900 block of Sixth Street in Lubbock when she was killed in her bed on June 28, 1989. Elkins' daughter found her almost-nude body[2] lying on the bed. The body showed signs of a severe beating to her face and head, with blood pooled underneath and splattered on the wall behind the bed's head. The medical examiner concluded her death was caused by blunt force trauma to the head.

Elkins' two grown granddaughters who testified at trial told that their grandmother was a farm wife who moved into Lubbock when her husband died some thirty years before her death. They said their grandmother did not drive and one said she drove her grandmother when needed.

Police found signs of forced entry at the back door of the modest house. They also found some conditions that were inconsistent with the home's meticulously clean and tidy interior. A kitchen dish with food scraps was sitting on a dresser in the bedroom; the tops to jewelry boxes were not in place; and the bathroom toilet seat was up with urine in the bowl. Some items were missing, including Elkins' purse, her wedding ring, and some meat wrapped in paper.

In the course of their investigation, Lubbock police detectives bundled the bed sheets and other bedding and delivered them with other evidence to the Department of Public Safety laboratory in Lubbock. At the time of submission to the laboratory, Jim

---

[2] Elkins' body was nude except for calf-length hosiery on her feet. Her nightgown was off her body, lying mostly underneath her body with her left arm still through the sleeve.

Thomas, then a laboratory supervisor,[3] examined the evidence submitted and found, on the bedding, five hairs that appeared to be pubic hairs.

As their investigation continued, police considered some thirty-seven potential suspects. No fingerprints at the scene matched any suspect, nor was any physical evidence located initially suggesting the involvement of any of the suspects. Police never recovered any of the items taken from the house.

Periodic review of the case continued over the following years. In 1995, police obtained a statement from a neighbor of Elkins, Belinda Jackson. Jackson provided a second statement to police in 2011. Her statements implicated another neighbor, Gary Tucker, in Elkins' murder. She also mentioned Tucker's friend, Keith Swindall, as a person possibly involved.

At intervals during the years, additional laboratory tests were performed on items collected at the murder scene. In late 2003, the laboratory tested the five hairs recovered from Elkins' bed linens. Analysis on that occasion confirmed the five hairs to be pubic hairs and determined they were not Elkins'.

In April 2011, a DNA analyst at the DPS lab generated DNA profiles from several items, including two of the pubic hairs. Thereafter a warrant was issued for Rey, who had not previously been a suspect, and he was arrested in early May 2011 in California where he was living. Through additional investigation, police learned that Rey had lived about two blocks from Elkins' home around the time of her death.

---

[3] Thomas testified at trial he had worked at the Lubbock Department of Public Safety Crime Laboratory for over 33 years and held the title Regional Laboratory Manager.

Rey was indicted in July 2012 for capital murder, the State accusing him of "intentionally or knowingly causing the death of Minnie Elkins on or about June 28, 1989, by striking her with a hard object unknown to the Grand Jury during the course of committing Burglary of a Habitation without the effective consent of the owner, Minnie Elkins." He plead not guilty.[4]

The DNA analyst testified he compared DNA taken from the two hairs with DNA obtained from a buccal swab of Rey's mouth taken after his arrest. He told the jury the DNA from both hairs, which he labeled #1 and #5, were consistent with Rey's DNA. He testified that given the matches on particular points, "the probability of selecting an unrelated person at random who could be a contributor to this DNA profile is approximately 1 in 29.5 billion for Caucasians, 1 in 1.941 billion for Blacks, and 1 in 551.9 million for Hispanics. Elkins, Tucker, Swindall and Jerry Rey are excluded as contributors to this DNA profile."[5]

The analyst also testified he found DNA material in "one stain from the pillow case" from Elkins' bed and in a similar stain[6] on a piece of Elkins' nightgown that was retained in evidence. He determined the DNA fit the "Y-STR profile of Reynaldo Rey and Jerry Rey," which, he said, was found in "2 of 8,487 total individuals" within a database that included Rey, his brother Jerry, Tucker and Swindall. The analyst testified that because the stain was a "single source profile," other potential suspects,

---

[4] Although not reflected in testimony, the record shows Rey was born April 15, 1963.

[5] Appellant Rey has a brother, Jerry Aguirre Rey, who was among the potential suspects considered by police.

[6] The testimony does not describe the source of the stains. From their descriptions in the testimony, it appears they were not blood stains.

4

including Tucker and Swindall, were excluded as the contributors of the DNA material found in the stains.

Rey did not testify at trial, but presented the testimony of Belinda Jackson, who testified in a manner generally consistent with her 1995 and 2011 statements. She told the jury she did not give a statement until 1995 because she was "worried about retaliation." She testified that on the day of the murder, she saw Gary Tucker in his apartment, which apparently was located on the lot next door to Elkins' home, with what she assumed was "a little blood on his hands." He also had what she thought was "a crow bar" that had "blood all over it." She also testified she saw in Tucker's apartment a "purse" and some "meat." She recalled the young woman who lived with Tucker did not carry a purse, and described the purse she saw as "a big purse, it wasn't just a little young lady's purse, it was a big purse." An officer testified Jackson stated "it seems like an older lady's purse." In her testimony, Jackson also stated she saw Tucker and Swindall in Elkins' back yard the day after the murder, appearing to be "looking for something." She agreed it was unusual for them to be in Elkins' back yard. Jackson also testified Tucker and Swindall "hung around" with a Hispanic male called "Rey."[7]

Rey was convicted of capital murder and, as mandated by law, was sentenced to imprisonment for life.[8] This appeal followed.

---

[7] Jackson's testimony did not distinguish between the brothers Rey, although she testified she did not recognize the defendant at trial.

[8] See TEX. CODE CRIM. PROC. ANN. art. 37.071 (West 2013); TEX. PENAL CODE ANN. § 12.31 (West 2013).

5

Analysis

Evidentiary Sufficiency

We begin with Rey's second issue, by which he challenges the sufficiency of the evidence to support his conviction, specifically its sufficiency to establish his identity as Elkins' murderer.

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2010)' (Cochran, J., concurring). When reviewing all of the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *Id.* at 906, 907 n.26. "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899.

In an evidentiary sufficiency review, the essential elements of the offense are those of a hypothetically correct jury charge for the offense in question (*i.e.*, one that accurately sets out the law and adequately describes the offense for which the defendant was tried without increasing the state's burden of proof or restricting the

6

state's theory of criminal responsibility). *Hooper v. State,* 214 S.W.3d 9, 14 (Tex. Crim. App. 2007); *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

In our review, we consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from that evidence. *Hooper,* 214 S.W.3d at 13. Circumstantial evidence alone is sufficient to establish the guilt of the accused, and the standard of review as to the sufficiency of the evidence is the same for both direct and circumstantial evidence cases. *Id.* Each fact need not point directly and independently to the guilt of the accused, so long as the cumulative force of all the evidence, when coupled with reasonable inferences to be drawn from that evidence, is sufficient to support the conviction. *Evans v. State,* 202 S.W.3d 158, 166 (Tex. Crim. App. 2006).

For this purpose an inference is "a conclusion reached by considering other facts and deducing a logical consequence from them." *Hooper,* 214 S.W.3d at 16. It is to be contrasted with speculation, which "is mere theorizing or guessing about the possible meaning of facts and evidence presented." *Id.* Although "[a] conclusion reached by speculation may not be completely unreasonable, . . . it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt." *Id.* Therefore, proof that amounts only to a strong suspicion or mere probability of guilt is insufficient to sustain a conviction. *Urbano v. State,* 837 S.W.2d 114, 116 (Tex. Crim. App. 1992); *In re J.M.C.D.,* 190 S.W.3d 779, 781 (Tex. App.—El Paso 2006, no pet.); *Hall v. State,* 86 S.W.3d 235, 240 (Tex. App.—Austin 2002, pet. ref'd); *Grant v. State,* 989 S.W.2d 428, 433 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant

7

committed" the criminal offense of which he is accused. *Williams v. State,* 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). If, given all of the evidence, a rational jury would *necessarily* entertain a reasonable doubt as to the defendant's guilt, the due process guarantee requires an appellate court to reverse the conviction. *Swearingen v. State,* 101 S.W.3d 89, 98 (Tex. Crim. App. 2003), *citing Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex. Crim. App. 1992) (emphasis in original).

Rey concedes the jury reasonably could infer that he had been inside Elkins' home. He argues that no further guilty inferences are possible. We disagree, and find the jury reasonably could have drawn considerably more incriminating inferences from the evidence. The DNA taken from the pubic hair found in Elkins' bedding, combined with that from the stains on her nightgown and bed pillow, allowed the jury a strong inference that Rey was present in her bed with her.[9] And, under the circumstances presented here, we see no inference of innocent or benign conduct by Rey to be drawn from the presence of that DNA in those locations.[10]

The presence of Rey's pubic hair and other DNA in Elkins' death-bed could be unrelated to her death but that is not the most logical conclusion to be drawn from those facts, *Hooper,* 214 S.W.3d at 16, nor under the circumstances presented is it such a likely conclusion as to compel rational jurors to entertain a reasonable doubt that he caused her death. *See Guevara v. State,* 152 S.W.3d 45, 49 (Tex. Crim. App. 2004);

_____

[9] That said, we note testimony shows no semen was detected.

[10] That reasonable inferences consistent with guilt may be drawn, however, does not deprive Rey of the protections of due process. "The constitutional necessity of proof beyond a reasonable doubt is not confined to those defendants who are morally blameless." *Jackson,* 443 U.S. at 323. "Under our system of criminal justice, even a thief is entitled to complain that he has been unconstitutionally convicted and imprisoned as a burglar." *Id.* at 323-24.

*Wise v. State*, 364 S.W.3d 900, 905-07 (Tex. Crim. App. 2012) (criticizing lower court's analysis for its focus on alternative hypotheses and its implicit examination of evidence in the light most favorable to the defendant). Viewing this compelling evidence, as well as that of Rey's residence two blocks from her home at the time of her death, in the light most favorable to the verdict, we find the jury did not act irrationally by identifying him as her murderer.

Jackson's testimony implicating Tucker and perhaps Swindall does not require a contrary conclusion. As the judge of the witnesses' credibility and the weight to be given their testimony, the jury was free to disbelieve, or assign little weight to, Jackson's account of the events she said she observed. *Brooks*, 323 S.W.3d at 899.

We resolve Rey's second issue against him.

Admission of Evidence

By his first appellate issue, Rey challenges the admission of the DNA evidence derived from the hairs and the stains. He couches his challenge as one attacking its authentication, arguing the trial court erred in admitting the DNA evidence because the evidence the court heard was "not sufficient to establish that the challenged items are what the proponent claims them to be."

In particular, Rey asserts the State failed to show the "first link" in the chain of custody regarding the DNA evidence. As support for his position, he points to the testimony of Gaylon Lewis, a retired police detective who was present when much of the evidence was collected in 1989 but could not recall how the bedding was "folded up" or which of the two detectives present placed it in a plastic bag. Rey also points to what

9

he describes as discrepancies with regard to when the evidence was collected. He argues three officers testified the murder was investigated on June 28, 1989 while Lewis said it was on June 29. According to testimony at the pretrial chain of custody hearing, the laboratory's evidence sheet showed it received evidence on both days.

The State notes a "chain of custody" is only one way to authenticate evidence. Because we find the evidence was authenticated by testimony from a witness with personal knowledge, we agree with the State that the trial court did not err.

The sufficiency of an evidentiary predicate is a matter within the trial court's discretion, and we will not overturn the court's decision to admit the evidence unless we find it abused its discretion. *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1991) (op. oh reh'g); *Smith v. State*, 683 S.W.2d 393, 405 (Tex. Crim. App. 1984). Stated another way, we will find an abuse of discretion only when the trial court acted without reference to any guiding rules or principles by acting arbitrarily or unreasonably. *Lyles v. State*, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993).

"A bedrock condition of admissibility of evidence in any legal contest is its relevance to an issue in the case—that is to say, its tendency to make a fact of consequence to determination of the action more or less probable." *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). Evidence has no relevance if it is not authentically what its proponent claims it to be. *Id.*

As a condition precedent to its admission, Texas Rule of Evidence 901 requires that evidence be authenticated--i.e., that sufficient proof be offered "to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901. Rule 901

10

does not require any particular standard of proof but instead requires only that the trial court be satisfied that the evidence is genuine. *Garner v. State*, 939 S.W.2d 802, 805 (Tex. App.—Fort Worth 1997, pet. ref'd). *See also Llamas v. State*, 270 S.W.3d 274, 281 (Tex. App.—Amarillo 2008, no pet.) (rule requires only a showing satisfying the trial court that the matter in question is what the proponent claims).

Evidence may be authenticated in a number of ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence. *Tienda*, 358 S.W.3d at 638. A chain of custody must be established when: (1) there is a possibility of commingling the item with items similar in appearance, (2) the sponsoring witness has not marked with distinctive markings an item not having distinctive characteristics, or (3) there is a suggestion the evidence has been tampered with or changed in some manner. *Ennis v. State*, 71 S.W.3d 804, 808 (Tex. App.—Texarkana 2002, no pet.); *see also Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997) (when there is no evidence of tampering, any gaps or minor theoretical breaches concerning the chain of evidence go to the weight, rather than the admissibility, of the evidence).

The laboratory manager, Jim Thomas, testified at the pretrial hearing that he received the items in 1989 from which the DNA evidence was derived. He identified his initials and the laboratory's case number on the laboratory evidence records, and on evidence containers. He also testified he was the person who recovered the hairs from the bed linens, and initially tested the hairs he found. He testified to the manner in which the hairs were maintained in subsequent years.

11

We find the trial court did not err in admitting the DNA evidence for lack of authentication. Thomas provided direct testimony at the hearing and was a witness with personal knowledge regarding that DNA evidence. *Tienda,* 358 S.W.3d at 638. As noted, he testified to initials and distinctive markings on the evidence containers. There was no suggestion that the bedding retained from Elkins' home had been commingled with other items similar in appearance nor was there a suggestion that the evidence had been tampered with or changed from the time it was submitted in 1989. Admissibility of the evidence did not depend on establishment of a chain of custody. *Ennis,* 71 S.W.3d at 808; *Lagrone,* 942 S.W.2d at 617.

We agree also with the State that Rey's complaints on appeal relate to the weight of the evidence rather than its admissibility. The trial court's role at the pretrial hearing was only to determine whether the State supplied facts that were sufficient to support a reasonable jury determination that the evidence proffered was authentic. *See Tienda,* 633 S.W.3d at 638. It was for the jury to decide its weight. *Lagrone,* 942 S.W.2d at 617.

We overrule Rey's first issue.

Conclusion

Having resolved both of Rey's issues against him, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.

12

FILE COPY

No. 07-12-00479-CR

| | | |
|---|---|---|
| Reynaldo Rey<br>Appellant | § | From the 137th District Court of<br>Lubbock County |
| | § | |
| v. | | October 29, 2014 |
| | § | |
| The State of Texas<br>Appellee | § | Opinion by Justice Campbell |
| | § | |

## J U D G M E N T

Pursuant to the opinion of the Court dated October 29, 2014, it is ordered, adjudged and decreed that the judgment of the trial court be affirmed.

Inasmuch as this is an appeal *in forma pauperis*, no costs beyond those that have been paid are adjudged.

It is further ordered that this decision be certified below for observance.

o O o